IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIM. NO. 21-398 (SCC) |
| JACHKEILIN TRINIDAD [1] AND YOMAR PÉREZ-ROMERO [2], | |
| Defendants. | |

## OPINION AND ORDER

Mr. Trinidad has moved to dismiss Count Four of the Indictment on the ground that 18 U.S.C. § 922(g)(1) infringes his Second Amendment right to keep and bear arms. Docket No. 76.[1] That statute prohibits convicted felons from possessing firearms. He argues that § 922(g)(1) is facially unconstitutional under *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), because there is no longstanding American tradition of prohibiting felons from possessing firearms. And it is unconstitutional as applied to him, he says, because his prior convictions were for nonviolent offenses. Although there might be some unconstitutional applications

---

1. Mr. Pérez-Romero has joined this motion. Docket Nos. 77, 85.

of § 922(g)(1), the First Circuit has held that this is not one of them. In *United States v. Torres-Rosario*, 658 F.3d 110 (1st Cir. 2011), the First Circuit, applying *District of Columbia v. Heller*, 554 U.S. 570 (2008), concluded that § 922(g)(1) is constitutional facially and as applied to a felon convicted of drug dealing offenses, such as distribution and possession with intent to distribute. *Id.* at 113. It left open the possibility that some felony offenses are so "tame and technical as to be insufficient to justify" § 922(g)(1)'s prohibition. *Id.* As we explain below, *Torres-Rosario* remains good law and compels us to deny Mr. Trinidad's motion to dismiss.

## I.

The Second Amendment states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The Supreme Court said very little about this right for over two hundred years. It broke its silence in *Heller* and held that the Second Amendment protects an individual right to keep and bear arms. 554 U.S. at 595. Two years later, it held that the Second Amendment applies to the

states through the Fourteenth Amendment's Due Process
Clause because the right to keep and bear arms is deeply
rooted in our Nation's history and fundamental to our system
of ordered liberty. *McDonald v. City of Chicago*, 561 U.S. 742,
767–68 (2010).

After *Heller* and *McDonald*, courts of appeals generally
applied a two-step test when analyzing whether a firearm
regulation violated the Second Amendment. *Gould v. Morgan*,
907 F.3d 659, 668 (1st Cir. 2018), *overruled in part by Bruen*, 142
S. Ct. 2111 (2022). At the first step, they would ask whether
the law burdened conduct that the Second Amendment
protected. This was a "backward-looking inquiry," asking
"whether the regulated conduct 'was understood to be within
the scope of the right at the time of ratification.'" *Id.* at 669
(quoting *United States v. Chester*, 628 F.3d 673, 680 (4th Cir.
2010)). No burden, no problem. But if the law burdened the
right, courts then decided which level of scrutiny applied and
whether the law survived it. *Id.* The first step was consistent
with *Heller*, but the second was not. *Bruen*, 142 S. Ct. at 2127.

*Bruen* clarified *Heller*'s constitutional standard. *Id.* at 2134. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129–30. Here is how *Bruen* applied this standard. Two people challenged New York's concealed-carry licensing law, which required applicants to show "proper cause"—a special need for self-protection, distinguishable from the community's need—to get a license. *Id.* at 2123. At step one, *Bruen* held that the Second Amendment's plain text covered the petitioners' conduct because, as "ordinary, law-abiding, adult citizens," they were "part of 'the people,'" handguns were "weapons 'in common use' today for self-defense," and the right to "bear" arms encompassed public carry for self-defense, their proposed course of conduct. *Id.* at 2134–35. Thus, step one looked to whether the who (person), what (conduct), and why (purpose) fell within the Second Amendment's scope.

At step two, *Bruen* evaluated a variety of laws from the 1200s to 1900s to determine whether there was an American tradition of regulating public carry like New York's law did. *See id.* at 2135. Another way to frame this inquiry is whether historical precedent from before, during, and after the Founding addressed the societal problem that the modern law seeks to address through comparable means. *Id.* at 2131–32. The analysis is "more nuanced" if the law at issue is "distinctly modern" in the sense that it addresses an unprecedented societal concern that the Founders did not confront. *Id.* at 2132. In those cases, we look to whether the modern law and its historical analogues are "relevantly similar." *Id.* This inquiry focuses on whether the modern law burdens the right in the same way and for the same reasons as the historical analogues did. *See id.* So there is a fork in the road in the second step: If the law addresses a societal problem that has existed since the Founding, the government must point to a "comparable tradition of regulation" to show that it is consistent with the Second Amendment. *See id.* at 2131–32. But if the law addresses an unprecedented societal

problem, the government need only point to a "relevantly similar" tradition of regulation. *See id.* at 2132.

What *Bruen* did not do is give us a blank slate to write on. The First Circuit, post-*Heller*, has rejected several challenges to subsections of § 922. *See, e.g., Torres-Rosario*, 658 F.3d at 113 (§ 922(g)(1)); *United States v. Booker*, 644 F.3d 12, 26 (1st Cir. 2011) (§ 922(g)(9)); *United States v. Rene E.*, 583 F.3d 8, 11 (1st Cir. 2009) (§ 922(x)(2)(A)). Insofar as *Bruen* has not "unmistakably . . . cast [those decisions] into disrepute," we are bound by them. *See Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004) ("Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority.").

*Bruen* has not disturbed *Torres-Rosario*. Start with *Heller*'s famous dictum about prohibitions on felons possessing firearms. The Supreme Court in *Heller, McDonald,* and *Bruen* spoke about prohibitions like § 922(g)(1). In *Heller,* the Court said that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession

of firearms by felons," which is a "presumptively lawful regulatory measure[ ]." 554 U.S. at 626 & 627 n.26. The Court reiterated this assurance in *McDonald*, 561 U.S. at 786, and a majority of the Justices repeated it in *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring), *id.* at 2189 (Breyer, J., dissenting). Courts of appeals are split on whether this dictum is binding. *Compare United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (treating it as binding); *United States v. Barton*, 633 F.3d 168, 171–72 (3d Cir. 2011) (same), *with United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (describing it as "precautionary language" that "warn[s] readers not to treat *Heller* as containing broader holdings than the Court set out to establish"). At least for § 922(g)(1), the First Circuit treats it as binding.

In *Torres-Rosario*, the First Circuit rejected the defendant's facial[2] challenge to § 922(g)(1) based on *Heller*'s

---

2. The First Circuit did not call the defendant's first challenge to § 922(g)(1) a facial one. But it's obvious that's what it was. *See Torres-Rosario*, 658 F.3d at 112–13 (framing the defendant's challenges as whether, given *Heller*, "§ 922(g)(1) is an unconstitutional exercise of Congress's authority" and whether it is unconstitutional as applied to him because "he has no prior

dictum that longstanding prohibitions on felons possessing firearms are presumptively lawful. 658 F.3d at 112–13; *see also Rossiter v. Potter*, 357 F.3d 26, 31 n.3 (1st Cir. 2004) ("[F]ederal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when . . . a dictum is of recent vintage and not enfeebled by any subsequent statement." (quoting *McCoy v. MIT*, 950 F.2d 13, 19 (1st Cir. 1991))). The First Circuit pointed out that the Supreme Court said that its opinions in *Heller* and *McDonald* "did not cast doubt on such longstanding regulatory measures as prohibition on the possession of firearms by felons" and that *Heller* had described these prohibitions as "presumptively lawful." *Torres-Rosario*, 658 F.3d at 113 (first quoting *McDonald*, 561

---

convictions for any violent felony"); *see also* Appellant's Brief at 45–52, United States v. Torres-Rosario, 658 F.3d 110 (1st Cir. 2011) (No. 10-1155) (arguing that § 922(g)(1) is facially unconstitutional and that its "constitutional infirmities are particularly compelling as applied to [him]"). And we are in good company interpreting it that way. *See, e.g., Medina v. Whitaker*, 913 F.3d 152, 155 (D.C. Cir. 2019) (including *Torres-Rosario* in a collection of cases rejecting facial challenges to § 922(g)(1)); *Folajtar v. Att'y Gen. of the U.S.*, 980 F.3d 897, 901 (3d Cir. 2020) (same).

U.S. at 786; and then quoting *Heller*, 554 U.S. at 627 n.26). It construed *Heller* as "approv[ing]" of these prohibitions on their face but "reserv[ing] the possibility of yet to be developed qualifications." *Id.* at 113.[3] As to the defendant's as-applied challenge, the First Circuit reiterated that the Supreme Court "may be open to claims that some felonies do not indicate potential violence and cannot be the basis for applying a categorical ban." *Id.* But it was hesitant to allow these challenges because they "would obviously present serious problems of administration, consistency and fair warning." *Id.* It nonetheless resolved the defendant's as-applied challenge on the ground that, "[a]ssuming *arguendo*

---

3. A few months before the First Circuit published *Torres-Rosario*, it published *Booker*. There, while discussing these passages in *Heller*, it said that it agreed "with the Seventh Circuit's observation . . . of the relative futility of 'pars[ing] these passages . . . as if they contain an answer to the question whether § 922(g)(9) is valid'" and that "some sort of showing must be made to support the adoption of a new categorical limit on the Second Amendment right." *Booker*, 644 F.3d at 23, 25 (quoting *Skoien*, 614 F.3d at 640). Thus, *Booker* and *Torres-Rosario* treated these passages very differently. *Torres-Rosario* treated them as dispositive on the question of whether § 922(g)(1) is facially constitutional, and *Booker* treated them as suggesting but not conclusively proving that § 922(g)(9) is facially constitutional. The challenge here is to § 922(g)(1), so we follow *Torres-Rosario*.

that the Supreme Court might find some felonies so tame and technical as to be insufficient to justify the ban," "drug dealing is not likely to be among them" because it is "notoriously linked to violence." *Id.* The defendant's convictions for "distribution and possession with intent to distribute Class A controlled substances" indicated potential violence and therefore placed him within § 922(g)(1)'s constitutional sweep. *See id.*

Mr. Trinidad has failed to distinguish himself from the defendant in *Torres-Rosario*. He has been convicted numerous times of drug dealing offenses, such as manufacturing, delivering, and possessing with intent to distribute controlled substances. Docket No. 22. When we ordered supplemental briefing, we warned him, citing *Torres-Rosario*, that "he has failed to show that he has standing to challenge § 922(g)(1) on the ground that it is unconstitutional as applied to nonviolent felons." Docket No. 89, pg. 6. In his supplemental brief, he pushes back on *Torres-Rosario*'s holding, arguing that his "apparently disqualifying convictions are not serious enough to strip him of his Second Amendment rights" because they

did not involve "the use or attempted use of force as an element." *See* Docket No. 94, pg. 13. But the First Circuit says otherwise, and that's what binds us here. Since Mr. Trinidad has failed to distinguish himself from the defendant in *Torres-Rosario*, he falls squarely within its purview, and we are therefore compelled to reject his as-applied challenge to § 922(g)(1).

Now back to *Bruen*. As we explained, *Torres-Rosario* compels us to reject Mr. Trinidad's facial and as-applied challenges to § 922(g)(1). The only way that might not be true is if *Bruen* has "unmistakably . . . cast [*Torres-Rosario*] into disrepute." *See Eulitt*, 386 F.3d at 349. It has not. *Bruen* has nothing to do with prohibitions on felons possessing firearms and frames its test as merely a more explicit version of *Heller*'s. *Bruen*, 142 S. Ct. at 2134. And five Justices either approved of the passages in *Heller* discussing such prohibitions or noted that *Bruen* left them intact. *See id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring); *id.* at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting). Because *Bruen* has not affected *Torres-Rosario*—let alone

unmistakably cast it into disrepute—we are bound by it. We need go no further.

## II.

Even if we had a blank slate to write on, Mr. Trinidad would not have made it past *Bruen*'s first step. Recall that step one looks to whether the Second Amendment's plain text covers the conduct at issue. It is not clear whether he bears the burden of showing that his conduct falls within the scope of the Second Amendment. Either way, he has not provided us with sufficient facts to find that the Second Amendment covers his conduct. He says, with no additional detail, that law enforcement officers discovered him possessing firearms. Docket No. 76, pg. 2. But we cannot blind ourselves to the fact that the Indictment accuses Mr. Trinidad of possessing those firearms in furtherance of a drug-trafficking crime. Docket No. 11, pgs. 2–3.

The Second Amendment does not protect the right to possess firearms for any purpose. *Heller*, 554 U.S. at 595 ("[W]e do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation.");

*see also id.* at 607 (noting that an influential treatise stated that the "Second Amendment right ought not 'be abused to the disturbance of the public peace,' such as by assembling with other armed individuals 'for an unlawful purpose'" (quoting W. RAWLE, A VIEW OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA 123 (1825))). Surely it does not protect possessing them in furtherance of drug trafficking. *See, e.g., United States v. Bryant*, 711 F.3d 363, 370 (2d Cir. 2013) ("[W]e hold that the Second Amendment does not protect the *unlawful* purpose of possessing a firearm in furtherance of a drug trafficking crime."); *United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011) ("[I]t cannot seriously be contended that the Second Amendment guarantees a right to use a firearm *in furtherance of drug trafficking*."); *cf. Heller*, 554 U.S. at 620 (noting that *United States v. Cruikshank*, 92 U.S. 542 (1875), "described the right protected by the Second Amendment as 'bearing arms for a lawful purpose'").

To be sure, the Indictment is just an accusation. We use its allegations only to illustrate that Mr. Trinidad's purpose for possessing the firearms matters. Returning to *Bruen*, the

petitioners there satisfied step one because, as "two ordinary, law-abiding, adult citizens," they were part of "the people," handguns are commonly used for self-defense, and the Second Amendment protected their proposed course of conduct (*i.e.*, "carrying handguns publicly for self-defense"). *Bruen*, 142 S. Ct. at 2134. If step one merely required them to say that they wanted to bear arms, then *Bruen*'s analysis about who they were, what they wanted to do, and why they wanted to do it would be gratuitous.

Mr. Trinidad knows who he is, what he wanted to do, and why he wanted to do it. Since he has the facts about his conduct and motives, it seems to us that he is the one who should have to provide us with sufficient factual allegations to hold that the who, what, and why at issue fall within the Second Amendment's scope.[4] Because he has not given us the

---

4. Had he said that he was possessing the firearms for a lawful purpose (and his claim was not foreclosed by *Torres-Rosario*), then step one would hinge on a factual dispute and we would have to defer ruling on whether he has satisfied step one until trial. *See generally United States v. Russell*, 919 F.2d 795, 797 (1st Cir. 1990) ("As a general rule, when a pretrial motion raises a

facts that we would need to do that, his claim stops at *Bruen*'s first step.

### III.

In sum, the Court **DENIES** Mr. Trinidad's motions to dismiss Count Four of the Indictment (Docket Nos. 76, 94).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 17th day of October 2022.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE

---

question of fact that is intertwined with the issues on the merits, resolution of the question of fact thus raised must be deferred until trial."); Fed. R. Crim. P. 12(b)(1) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine *without a trial on the merits*." (emphasis added)). A special verdict form would make this easy enough.